Thank you, Counsel. You may now proceed. May it please the Court, my name is Tony Shaw. I'm from Prescott, Arizona, and I represent James Greer in this appeal. This case we submit to you is not really in dispute on the law. It's in dispute on the facts, where we contend the district judge erred in deciding questions of fact that should have been submitted to the jury. The issues involve three claims which were granted judgment as a matter of law against us on the ground of qualified immunity during trial, involving excessive force and arrest, lack of probable cause to arrest in a police case, and search, where the searches were divided up into three separate searches, one of which we contend is nonexistent in this case. Now, the searches, it was a little unclear to me when one search began and when another search ended. Lay out your interpretation of the searches. When did each begin and end? I've done this timeline here, and I'm going to cut right to the chase as you ask that question. We contend, Mr. Greer contends, that the first search was a protective search sweep down here when he's on the porch, and Deputy Morgan comes to him, pats him down, and asks him for a two-minute search of the house. He says yes, and he gives him a two-minute search. He goes through the house. We contend that was a protective sweep. The district judge, we say, erred because, basing on the defendant's argument, he found the first search way over here is Morgan's version. He basically disregarded Greer's version and ruled against Greer and decided the case on excessive force and search based on Morgan's version. And he says the first search is the protective sweep that occurs here. That caused us damage, by the way, to get to one of the arguments the Respondents said in the reply brief, because they argued, well, we're still able to argue that the protective search sweep morphed itself into a unconsented search for evidence. However, we were not able to argue this search here, because this was implicitly a search. So the first search was a search in which the district judge ruled against Mr. Greer in the course of granting that judgment as an added law and what that district judge said was the second search. Did Mr. Greer consent to this first search as you identify it? Yes. The first search in Mr. Greer's testimony was consented. All right. Now, he also consented when he was sitting in the car to another search. That's correct. But that occurs late afternoon. This is what they're arguing on the other side, that that search occurs through Sergeant Gerald. Sergeant Gerald is the one that comes later at 8.05 p.m. After all this searching has been going on for 20 to 30 minutes, as a matter of fact, in preparing for this argument today, I read the record. This is not in our briefs, but Sergeant Gerald at day four of the jury trial at pages 56 and 57 testifies he thinks he spoke with Mr. Greer in the car after he was told that the county attorney had said for everybody to get out of the house. That would have been here at 8.09 p.m. So if that testimony is accurate, he would have gotten that consent after all the searching was done and after the officers came out, which makes the judge's decision on that error. I know this doesn't matter for purposes of our analysis, but what damages do you contend flow from the allegedly unconstitutional search to which you're referring? The damages that come from the unconstitutional search are the tearing up of the house, the trashing of the house, the turning over ash cans or the cleaning up, and the violation of the constitutional right of being secure in your home without a warrant. How does that differ from the jury found an unconstitutional search and awarded nominal damages? How do you segregate the damages? Well, you see, that's what the jury did is based solely upon this one here being a protective search. They were not allowed to consider, Mr. Greer's version, that the protective search occurred here and that this search after the handcuffing would not have been a protective sweep at all. A protective sweep at that time, you have a better right to be in the house than you do if it's an unconsented search. Well, let me put it this way. When did the damage to the property occur? When did the damage to the property occur? The damage to the property occurred after Greer is handcuffed here and they go into the house afterwards and they're, according to two witnesses, they're dumping stuff out onto the floor, on the roof, under the house, and it's going for 20 to 30 minutes. Now, regarding the excessive force claim and the lack of probable cause to arrest claim, the difference is the trial judge basically took Morgan's version of the events. Greer appeared unsafe when he got onto the porch. He was yelling profanity and walking toward them on the ground, yelling, not obeying a command. He basically had to rule against Greer's version, where Greer said he was standing quietly, he was patted down, he let them go in and search. They argue now, although this was not what the district judge found, the district judge ruled against us on excessive force as qualified immunity based on the fact the officer didn't participate. He ignores, of course, the fact that pepper spray is done and by Officer Morgan and he jumps into the fray and participates in the handcuffing. But now they're arguing this is a justifiable detention. And for that, you have to take Morgan's version only. If Morgan's version is the only version, maybe it is justifiable detention, because at that time they hadn't been in the house. But if you take Greer's version, he's already gone in the house, done his protective sweep. As soon as he opens the door, he can see the computer has not been shot, which is one of the complaints that got them there in the first place that might have happened. He can see that there's nobody in the house. Mr. Greer is cooperative. He would then have no justifiable reason to order Greer to the ground to be restrained and then to handcuff him. But don't we have to look at this from the standpoint of the reasonable deputy at that stage in terms of what he has heard, what the telephone calls identified as what was going on? That's correct, but we have a dispute in the facts about what the reasonable deputy heard and what he did. We have the reasonable deputy testifying on the one hand and you have Mr. Greer testifying on the other hand. And it's the jury is the decider of facts. If the jury decides Mr. Greer's version is correct, and there is some corroboration for his version. But isn't the real question not who's correct so much as what did Greer understand? Not Greer. What did the deputy understood? What did the deputy understand to be the situation that he was reacting to? And some of that involves the telephone calls. That's correct. Yes, that's correct. He misunderstood what was said on the telephone. Don't we have to look at his state of mind? We do have to look at his state of mind. But unlike the Second Circuit Rizzuti case where you have a deputy after the fact he was not there with a victim present saying I was beaten up and I've got some blood on my face and you have the defendant screaming I didn't do it. He still has the right there to take the victim's word and to react. Here, however, you have the defendant and the deputy at the scene while it's happening and you have conflicting evidence about what happened. When you have conflicting evidence, I submit that's for the jury to decide that question of fact, not for the district judge. And that's what the district judge did in error here. He basically didn't even consider Greer's version. And if you look at their appellee's brief on appeal, they're not considering it either. They're considering this to be the only fact in the case. I can see I have 55 seconds. If there are no more questions, I'll reserve. Please reserve. Thank you. We'll hear from the county. May it please the Court, Randy Warner representing Deputy Morgan. I also represent Yavapai County, but Yavapai County is not a party to the appeal. I want to talk first about the issue of the search. The judge granted directed verdict, judgment as a matter of law as to the search, based on the argument that was made. And the argument that was made was that there was a search, what we called the second search, that started when consent was given to Deputy Jarrell and ended when Deputy Mattern says they're coming out of the house now. That is all very clear on the tape. And I would suggest this is one case where you really do need to listen to at least excerpts of that tape because it was clearly the basis for the judge's ruling. The judge rules there's no dispute on this tape, and certainly Mr. Greer doesn't dispute it when cross-examined. I told Deputy Jarrell, go look, sir, please. As counsel indicates in the briefs, he implored Deputy Jarrell to go in the house, and look, he wanted to exonerate himself. There's also no dispute that that search ended when Mr. Greer starts shouting, you have no right to be in my house, I want everybody out. Three minutes later, you can time it, Deputy Mattern says they're coming out now, sir, they're coming out now. No dispute in the record that that happened in a very timely way. And so if the question is on what search was directed verdict granted, the answer is it's granted on the search that we described in our judgment as a matter of law argument. And you can see that pretty clearly in the transcript at day five. It begins at page 171 and goes through page 172. Now, in response to that argument, which is a very specific argument framed in time, there's no argument about, well, Judge, we're talking about the second search. There was more to it before that. There's no argument about, Judge, there was more to it after that. The only argument in response by Mr. Greer is that consent was not voluntarily given. So when we talk about everything that happened before consent is given to Sergeant Jarrell, that all was argued to the jury. It was allowed to be argued to the jury. In fact, there's one point during closing argument, excuse me, when Mr. Shaw starts making an argument about they were rummaging through the home and exactly the damages he claimed arising out of the search, and counsel objects, defense counsel objects, and the court overrules the objection. Let's continue arguing about whatever happened before the time that consent was given. Well, when did the damage occur under your version of the facts? Your Honor, there's no evidence in the record on when the damage occurred. If you consider the damage to be the rummaging through the house, the dumping of ashes, those kind of things, the allegation is that that happened during the time of searching. There's no evidence that I'm aware of that says it either happened before or after the consent that was given. Well, was there a – was the first search that everybody agreed was consented – consented to search a duration of about two minutes? Your Honor, Mr. Greer's version of the facts is I gave a two-minute consent search. That happened. And it may have been three minutes or two minutes, but – He says – he timed it. It was two minutes. He wasn't claiming that the damage to the house occurred during that first search. No. He, in fact, claims that there is searching going on between what he says is the first search and the consent given to Sergeant Jarrell. He claims that as soon as he's on the ground, he hears people rushing in his house and they're there for 15 to 20 minutes. We have to believe that. Why isn't that a jury question? It is a jury question that was submitted to the jury, Your Honor. It was submitted? And I want to be clear about this. Our position is not that I want to assume away those facts. Mr. Greer says they were in my house from the moment I was on the ground without my consent for 15 to 20 minutes until I gave Sergeant Jarrell consent, and he admits he gave Sergeant Jarrell consent. The judgment as a matter of law was only granted from that consent forward, and that's clearly framed by the way we argued it. It's clearly framed by the way counsel responded to it, and it's framed by the way the judge gives his ruling. So everything that happened before that is, as Greer argued it, an extension of an improper search. All right. So either consented to or the jury got that and decided it for Greer. Correct. With nominal damages. Correct. All right. So we start with he gives a two-minute consent and then he revokes his consent. Right? Correct. Okay. And you're conceding that's not an issue at this one? Correct. So you're basing it, then there was a period of time in between when he says searching was going on without consent. Right? Correct. That's his version of the fact. Greer's version of the fact is Morgan went in, he came out, then they tackle me, then I hear people rushing in. He describes that pretty vividly. I'm on the ground, I can hear people rushing into my house, and other people testify as well that the deputies were in there for 15 to 20 minutes before consent is given to jury. Well, then that's the search the jury got. That's the search the jury got. It also got the subsequent search. There are actually two searches the jury got that 15 to 20-minute period of time, and also a consent search where consent was given by Mr. Greer's wife. The scope of that consent, whether it was exceeded, was a jury question. The judge refused to grant judgment as a matter of law on that, so the jury determined that as well. Let me get to the issue of actual damages, because, yes, the jury did find that there was a constitutional violation here, found no damages. There's no evidence in this case of any additional damage that occurred between consent given to Jarrell and consent revoked and when the deputies come out. There's no evidence that any additional actual damage occurred during that period of time. Nobody put on any evidence about when the damage occurred precisely, did they? No. That is correct. So we don't know on this record? We don't know, but what we do know is that all the damage that was claimed was argued to the jury, and I'd refer the court to the closing arguments at page 34, also at page 25 through 27. Those arguments are made to the jury, so it really doesn't matter when it occurred. The jury was told this was the damage I suffered as a result of searches. You have three minutes left. You better get to your excessive force. Let me get to it. Your Honor, you do have to view the events through the eyes of the officer. Now, I understand this is somewhat of a difficult gymnastic, because on the one hand, we're viewing the facts in a light most favorable to the non-movement, but we're also viewing the events through the eyes of the officer. But there's not a huge difference on what happens. Mr. Greer testifies. I'm cooperating. Deputy Morgan orders me to the ground. Undisputed. Both sides agree to that. No dispute that Mr. Greer at that point says no, and he actually uses a much more colorful language than that. Deputy Morgan says it again. Again, undisputed. Both sides agree to that. He says, no, F you, get off my property, and starts moving in the direction of Deputy Morgan. Now, here we've got a little dispute. The police officers say he was moving aggressively. Mr. Greer says, I wasn't moving aggressively. I was simply moving in the direction of Morgan because of references in that direction. You have to take his view first. You take those facts as Greer says them, and a reasonable officer could think there was a safety issue. Now, recall what the officer knows at that time. He knows this is a domestic issue. The worst calls these officers get. I had a fight with my wife. I want my son back. I've got guns in the house. The daughter thinks there was a gunshot. Okay, in the two minutes they didn't find evidence of a gunshot, but that certainly is not enough to dispel a reasonable fear. A reasonable officer in Deputy Morgan's shoes could do what was prudent to order this suspect on the ground so we can get the situation calmed and neutralized. We can do our investigation, and at the end of that investigation, this is what Deputy Morgan says, at the end of that investigation, if we find no crime has been committed, well, we'll consider this a successful call and we'll move on. The benefit of the doubt, and the Supreme Court told us that recently in the Brousseau case, the benefit of the doubt has to go to that officer who, even under Mr. Greer's version of the facts, erred on the side of caution in protecting human life. Let me get to the issue of arrest, and there are several points in time in which we need to decide this. First of all, at the moment, Deputy Morgan says get down on the ground. That's not an arrest. I don't think anybody thinks that's an arrest. It's part of the investigatory detention, and there's no dispute that somewhere down the line, there was an arrest on a number of charges, some of which are undisputed, the fact that he threatened to burn down his daughter's house. But at the moment that he's actually tackled, there's some debate about whether that's an arrest. Our position is, no, it's not an arrest. The officers are still trying to neutralize the situation and ensure safety, but at the very least, they did have probable cause to arrest for aggravated assault or at least have qualified immunity as to that issue based on Mr. Greer's actions in walking toward. Do you think that's an aggravated assault, walking toward an officer? I believe that the simply walking toward an officer is not, but this officer could reasonably believe that coupled with the refusal to take instructions, the curse words, that the actions in moving toward Deputy Morgan were not just a walking in the direction, but actually an assault. Wasn't he walking back into his house or trying to walk back into his house? He's walking in the direction of Deputy Morgan and in the direction of his house. And the fault was between Greer and the house? Correct. I think sort of between them. And they decided to take him down? Correct. And what was the cause of the takedown? What was the danger to the officers that provoked the takedown at that point? The danger is Deputy Morgan's got a gun. There's some indication we don't want this suspect to get so close to Deputy Morgan that he's got a possibility of getting the gun. There's a possibility of danger to Mr. Greer. And was worried about Greer taking his gun away from him or something? Well, the person who did the takedown was a Department of Public Safety officer. He testifies his concern is, one, something might happen to Greer. He may get shot. Two, he may get so close to Deputy Morgan that we've got a much more dangerous situation on our hands because he's got access to the gun. Under the circumstances, given what they knew about the call, that's a perfectly prudent thing to do under those circumstances, at least an officer in the heat of that moment. I can understand police getting a call, a man with a gun in house shooting, et cetera. And so they kind of swarm the place, and they're worried about all the safety hazards that are involved in that kind of a situation. But isn't there a question of fact as to whether the situation had come to repose when they patted him down and he said, go ahead and look in the house, and they came in, went in and came out? The situation had calmed down considerably, hadn't it, at that point? So what started this vigorous, I was thinking of Tinkers to Evers to Chance. It was Evers and Morgan taking him down. What was the reason for taking that question away from the jury on the unreasonable force question? Two precipitating events. One, Deputy Morgan says, get down on the ground. Two, the response to that is not, sure, officer, I'm glad to comply with you, but F you, get off my property, and then starts moving toward him. That's his attitude. Now he's getting punished for his attitude, isn't he? No, Your Honor, he's being taken down because the officers reasonably believe that there's some risk that that situation has not, contrary to what happened before, been calmed down. At that moment, the situation is not very calm at all. And again, you've got to view that through the eyes. And all of this good material for juries to chew about in the jury room. Respectfully, Your Honor, the qualified immunity determination is as a question of law. If you assume the facts as Greer says them, a reasonable officer would do, could do exactly what was done in this case. Let me add, by the way, Deputy Morgan was not involved in the takedown. His act of force was to use the mace at that point. The real question on force is whether what he did before that. Evers was the guy that used the force. Correct. And he turns out not to be a defendant in this case. Is that it? At some point he was dismissed. Thank you, counsel. Your time has expired. We'll now hear from counsel. You have some reserved time. Not a lot, but do your best. Judges, the district judge on the search issue ruled that the first search was here, the one after the handcuffing. That's the one that he ruled. And that did damage us by making that ruling. Because, and I'm going to quote from my final argument to the jury. I was arguing that the consent, if there was a consent, a generative consent, at his stage after the handcuffing, it was withdrawn because Greer, for 20 to 30 minutes, according to the testimony, had been screaming, get out of the house. I was arguing that. Mr. Masterson jumps up, and here's a direct quote. He says, Judge, that is flat. He is ignoring the court's order dismissing that claim. He's telling the jury false statements. I mean, I can't sit here and allow him to convince the jury that the second search is still in this lawsuit sustained. So the jury is then told that that is out of the case. We are damaged. I believe my time is up. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. So, guys, dear, dear, dear people, first of all, it's a pleasure to have you here today. We're all proud of the United States Court of Appeals for the next circuit, and now the part for this court organization that is starting right now. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Goodwin, O'scannlain, Thomas